# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHRISTOPHER WAYNE WILLIAMS,**
    **Petitioner-Defendant,**

v.                                                                             **Civil Action No. 2:14-cv-37**
                                                                              **Criminal Action No. 2:13-cr-10**
                                                                              **(Judge Bailey)**

**UNITED STATES OF AMERICA,**
    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION

This case came before the Court for an evidentiary hearing on February 12, 2015. Petitioner, a federal inmate, appeared by telephone from his place of incarceration. Appearing in person were Thomas S. Dyer, on behalf of Petitioner, and Shawn Morgan, Assistant United States Attorney, on behalf of the United States. The Court heard testimony from Petitioner and Federal Public Defender Brian Kornbrath, Petitioner's former defense counsel.

### I.    Procedural History

Petitioner initiated this case by filing a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence on May 19, 2014. (Docket No. 44.)[1] In his motion, Petitioner raised several grounds for relief. After being ordered to answer, the Government filed a response. (Docket No. 52.) On December 12, 2014, the undersigned issued a Report and Recommendation ("R&R") recommending that all except one of Petitioner's claims be denied and dismissed. The record 2:14cv37 reflects Petitioner received his copy of the Report and Recommendation on December 29, 2014 (Docket No. 7). No objections were filed.

An evidentiary hearing was scheduled as to Petitioner's sole remaining claim that his

---

[1] All docket numbers refer to entries in Criminal No. 2:13-cr-10 unless otherwise stated.

counsel, Brian Kornbrath, failed to file an appeal in spite of Petitioner allegedly telling his counsel to do so.

## II. Evidentiary Hearing

The following is a recap of the testimony provided to the Court on February 12, 2015.

### A. Petitioner Christopher Williams

Petitioner testified that on the day of his sentencing hearing before Judge Bailey, right after his sentence was pronounced and before the United States Marshals took him back to the lockup, he asked Mr. Kornbrath if he could appeal his conviction and sentence. According to Petitioner, Mr. Kornbrath told him that "they would look into it." Petitioner testified that this conversation occurred while both he and Mr. Kornbrath were still seated at the defense table; Petitioner did not know if anyone, such as the United States Marshals, overheard his request. Petitioner did not specifically mention what he wanted to appeal, just that he wanted to know if he could appeal.

Petitioner testified that he never heard back from Mr. Kornbrath regarding his request. He knew that he only had a short period of time within which to request an appeal, and he did not follow up with a written request for Mr. Kornbrath to file an appeal. Petitioner assumed that Mr. Kornbrath would know what he wanted. He testified that right after his sentencing, he was in transport for ninety (90) days and was unable to talk to Mr. Kornbrath. He did not know whether Mr. Kornbrath knew where he was during the thirty (30) days following his sentencing. After Petitioner sent a letter to the Fourth Circuit Court of Appeals asking about the status of his appeal, he received a letter from Mr. Kornbrath; however, he did not testify as to the contents of that letter.

Petitioner testified that prior to entering his plea of guilty, he read his own plea agreement. He thought that his total offense level was going to be 20, and that his plea agreement said that he

2

could appeal an offense level of 20 or below. Petitioner would have appealed the sentencing enhancements that took him from an offense level of 20 to an offense level of 28. He understood that he would have had a right to pursue that appeal under his plea agreement.

**B.     Federal Public Defender Brian Kornbrath**

Mr. Kornbrath testified that he represented Petitioner at the trial level. He did not recall any difficulties with communicating legal concepts to Petitioner. Petitioner often had a number of questions for Mr. Kornbrath, but they worked through them together. Mr. Kornbrath testified that he did not really get along well with Petitioner, as Petitioner was upset with him many times. Petitioner was primarily upset because of the projected outcome of his case and the fact that he remained detained pending his proceedings. Mr. Kornbrath testified that these factors affected the attorney-client relationship.

During one attorney-client meeting, Mr. Kornbrath met with Petitioner and went over a projected Guidelines calculation with him. The sheet that Mr. Kornbrath prepared showed a base offense level of 20, a two-level enhancement for possession of stolen firearms; a four-level enhancement for possession of a firearm during the commission of a felony; a two-level enhancement for the number of firearms involved; and a three-level reduction for acceptance of responsibility, for a total offense level of 25. Mr. Kornbrath did mistakenly calculate Petitioner's criminal history as putting him at a category IV; however, the sentencing Court determined that Petitioner was only a category III. The sheet prepared by Mr. Kornbrath was used in his discussions with Petitioner before Petitioner decided to sign his plea agreement. Petitioner wrote to Mr. Kornbrath approximately twelve (12) days before sentencing, voicing a number of concerns, including concerns about the Guidelines calculation. For example, Petitioner did not understand

3

how a daytime burglary could be a crime of violence. Mr. Kornbrath addressed those concerns with Petitioner prior to sentencing.

Mr. Kornbrath testified that after Petitioner's sentencing, he never heard Petitioner testify that he wanted to appeal. He testified that he has no hearing difficulties that would have prevented him from hearing Petitioner. If Mr. Kornbrath had heard Petitioner mention anything about wanting to appeal, he would have gone to the Marshals' lockup to follow up with Petitioner. Mr. Kornbrath testified that he did not have any file notes from Petitioner's sentencing hearing because he personally had eight (8) hearings before Chief Judge Bailey that day. When asked if there was any possibility that he forgot Petitioner asked to appeal given the "hectic" nature of the day, Mr. Kornbrath testified that if he had heard Petitioner mention any reference to an appeal, he would have at least tried to meet with Petitioner in the lockup after his sentencing. Mr. Kornbrath never spoke to Petitioner again after the Marshals took him out of the courtroom following sentencing. He testified that after receiving a courtesy copy of Petitioner's letter to the Fourth Circuit, he sent a letter to Petitioner, alluding that Petitioner knew there was no appeal pending.

Mr. Kornbrath testified that had Petitioner requested an appeal, it would have been his opinion that Petitioner would have not had a viable appeal. However, he would have filed a brief pursuant to Anders v. California, 388 U.S. 738 (1967),[2] on Petitioner's behalf. Mr. Kornbrath

---

[2] In Anders, the Supreme Court held:

> [I]f counsel finds his [client's] case to be wholly frivolous [for appeal], after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court–not counsel–then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

4

testified that he has never failed or refused to file an appeal on behalf of a client. At times, he has tried to talk clients out of appealing, but he testified that if clients "dig their heels in," he is obligated to file notices of appeal. Mr. Kornbrath testified that he has filed "scores" of Anders briefs in the years that he has been practicing as a defense attorney.

### III. Analysis

As a preliminary matter, the undersigned acknowledges that Petitioner waived his right to file an appeal as part of his plea agreement. As to whether such a waiver is valid, the Fourth Circuit has found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forego the right to appeal." United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994). Whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id.

After upholding the general validity of such a provision, the Fourth Circuit noted that even with such a provision, a defendant may obtain appellate review of certain limited grounds. Id. at 742. For example, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

The Supreme Court has set forth a two-prong test for determining whether a convicted

---

Id. at 744.

defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

Despite the fact that a defendant can waive his right to an appeal, the Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when

6

requested by his client deprives the client of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). The Court noted:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L.E. 2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious, Anders v. California, 386 U.S. 738 (1967).

Id. at 41.

Furthermore, in Roe v. Flores-Ortega, 52 U.S. 470 (2000), the Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered. Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478. Additionally, the Fourth Circuit maintains that counsel must file an appeal if asked, "even if doing so would be contrary to the plea agreement and harmful to the client's interests." United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007). After an evidentiary hearing on whether counsel was instructed to file a notice of appeal, the Court is required to determine whether the defendant unequivocally instructed his attorney to file a notice of appeal, or if his attorney was not so instructed, the Court will determine if the defendant has met his burden of showing that: (1) his attorney had a duty to consult under Roe v. Flores-Ortega; (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations. Poindexter, 492 F.3d at 273.

As a preliminary matter, Petitioner's testimony regarding his offense level is inconsistent with the record. In the plea agreement, Petitioner and the Government stipulated that the applicable

7

base offense level was 20, and that the adjusted offense level subtotal was 28 after the application of three separate sentencing enhancements. (Docket No. 24 at 3-4.) Petitioner's plea agreement further provided that he was retaining his appellate and collateral attack rights "only with respect to any sentence imposed using a base offense level of 21 or higher." (Id. at 4.) During Petitioner's Rule 11 hearing, the following colloquy occurred:

> THE COURT: Did you and Mr. Kornbrath discuss that under 18 U.S.C. Section 3742 you have a right to appeal your conviction and sentence to the Fourth Circuit Court of Appeals within 14 days of the announcement of your sentence?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you also discuss with Mr. Kornbrath that you may file a motion under 28 U.S.C. Section 2255 collaterally attacking or challenging your sentence and how that sentence is being carried out?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Under paragraph 12 of–I'm sorry–13 of your written plea agreement, you give up your right to directly appeal the sentence and conviction, and you give up your right to collaterally attack or challenge it if the actual sentence is the equivalent of a guideline-calculated sentence using a base offense level; that is, **a base offense level means the base offense before any adjustments**, of 21 or–of 20 or lower, you give it up. You only keep it if–those rights–if your base offense level is 21 or higher. Do you understand that?

THE DEFENDANT: Yes, sir.

(Docket No. 41 at 16:6-17:1 (emphasis added).) Also,

> THE COURT: Now, let's turn to paragraph nine. In paragraph nine, you agree to a number of factual provisions, and they are all set out in there. Basically they're all the elements of the offense and they are certain matters that increase by various levels under the guidelines of the conduct level. In other words,

>            they take you from a base offense level of 20 to an adjusted
>            offense level of 28 under the guidelines. Do you understand
>            that?
>
> THE DEFENDANT: Yes, sir.

(Id. at 21:21-22:4.) Furthermore, at sentencing, the following colloquy occurred:

> THE COURT: I will now announce my tentative findings as to the applicable guidelines. The base offense level is 20, a two-level enhancement for the number of firearms, a two-level enhancement for stolen firearm, and a four-level enhancement for possession of the weapon in connection with another felony offense, resulting in an adjusted offense level of 28. Less two levels for acceptance of responsibility. What's the Government's position with regard to the third level?
>
> MS. MORGAN: We would move for the reduction, Your Honor.
>
> THE COURT: The Government's motion for a third level is granted, resulting in a total offense level of 25. . . .

(Docket No. 40 at 4:16-5:1.) Given this record, the undersigned finds that Petitioner's testimony that he thought his total offense level was going to be 20, and that his plea agreement said he could appeal a sentence with a base offense level of 20 or below, is simply not credible.

The undersigned also finds not credible Petitioner's testimony that, at the end of his sentencing, he told Mr. Kornbrath that he wanted to appeal[3], and Mr. Kornbrath said they would look into it." The record establishes that it is Mr. Kornbrath's practice to follow up with every client who alludes to a desire to appeal his or her criminal judgment. Here, specifically, Mr. Kornbrath testified that if he had heard Defendant mention anything about filing a notice of appeal, he would have followed him back to the Marshals' lockup to discuss the issue further. Furthermore, Mr. Kornbrath

---

[3]For purposes of this proceeding, the undersigned takes Petitioner's unclear question: "he asked Mr. Kornbrath if he could appeal his conviction and sentence" in the light most favorable to Petitioner, to wit: as his request for an appeal.

9

testified that had Petitioner instructed him to file a notice of appeal, it would have been his opinion that such an appeal would be meritless, but that he would be obligated to file the notice and subsequently file an Anders brief. The Court notes that Mr. Kornbrath has never failed or refused to file a notice of appeal on behalf of a client.

The undersigned also finds that Petitioner's testimony that he was in transport right after his sentencing and had no way of reaching Mr. Kornbrath to be not credible. Petitioner was sentenced on June 25, 2013; however, his Judgment and Commitment Order ("J&C") was not entered until July 1, 2013. (Docket No. 29.) That J&C would then have been forwarded to the Bureau of Prisons ("BOP") so that BOP officials could determine to which federal facility Petitioner would have been designated. Petitioner would not have been transported until a designation was determined. Given this timeline, it is clear that Petitioner had the time before transport to call Mr. Kornbrath and ask him to file a notice of appeal. However, given that both Petitioner and Mr. Kornbrath testified that they never spoke after sentencing, it is clear that Petitioner did not use that time to call Mr. Kornbrath and request that he file a notice of appeal.

It is well established that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. Here, however, the record does not contain any credible evidence to show that Petitioner even reasonably demonstrated an interest in appealing or requested that Mr. Kornbrath file an appeal. Accordingly, the undersigned finds that Petitioner has not met his burden under Strickland, Flores-Ortega, or Poindexter. He has not demonstrated that counsel failed to perform in a professionally unreasonable manner by failing to follow express instructions regarding an appeal. Furthermore, even if Petitioner

10

could prove that counsel was ineffective, he cannot prove prejudice. In his plea agreement, Petitioner stipulated that the three (3) sentencing enhancements applied, and that his base offense level was 20. (Docket No. 24 at 3-4.) Petitioner further agreed to waive his appellate rights with if the sentence imposed used a base offense level of 20 or lower. (Id. at 4.) Accordingly, even if Mr. Kornbrath had filed an appeal, it would not have succeeded. Poindexter, 492 F.3d at 273. Therefore, the undersigned recommends that Petitioner's claim that counsel failed to file an appeal be denied.

## IV. Other Matters

**A.    Petitioner's Motion for Default Judgment**

On July 7, 2014, Petitioner filed a motion for default judgment, requesting that the Court enter judgment against the Government for failing to respond to his § 2255 motion within the time provided by the Court. (Docket No. 53.) In response, the Government stated that it had mailed a copy of its response via first class mail to Petitioner on June 17, 2014, and that it was providing another copy of its response to Petitioner. (Docket No. 56 and 56-1.)

On May 20, 2014, the undersigned directed the Government to file a response to Petitioner's motion within twenty-eight (28) days. (Docket No. 49.) The Government timely filed its response on June 17, 2014. (Docket No. 52.) Even if the Government's answer was served beyond the time period provided by the Court, Fed. R. Civ. P. 55(d) provides that default judgment "may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." As noted above, the undersigned has found that Petitioner's claim that counsel was ineffective for failing to file an appeal is meritless. Furthermore, the undersigned previously entered a Report and Recommendation finding that all of Petitioner's other claims for relief were without merit. (Docket No. 60.) As previously noted, no objections

11

were filed to that Report and Recommendation. Accordingly, Petitioner's motion for default judgment should be denied.

**B.     Petitioner's Motion to Amend**

On August 28, 2014, Petitioner filed a motion to amend his § 2255 motion to include a claim that he "was sentenced in practice that Congress has not authorized." (Docket No. 58 at 3.) Specifically, he asserts that pursuant to the Seventh Circuit's recent decision in <u>United States v. Harden</u>, 758 F.3d 886 (7th Cir. 2014), "it was unlawful for this court to accept his guilty plea by Federal Magistrate and knew this was unlawful." (<u>Id.</u>)

In <u>Harden</u>, the Seventh Circuit found that acceptance of the defendant's guilty plea, even with the defendant's consent, by a United States Magistrate Judge violated the Federal Magistrates Act. <u>Harden</u>, 758 F.3d at 889. Unfortunately for Petitioner, however, <u>Harden</u> is not binding on this Court. Rather, this Court is bound by Fourth Circuit decisions on this issue. The Fourth Circuit has noted that "a magistrate judge's acceptance of a plea, with the consent of the parties, does not appear to present any constitutional problems, either generally or in this case." <u>United States v. Benton</u>, 523 F.3d 424, 432 (4th Cir. 2008). The panel further concluded that "the acceptance of a plea is an 'additional duty' under 28 U.S.C. § 636(b)(3)." <u>Id.</u> at 433. Neither an *en banc* decision of the Fourth Circuit nor a decision by the Supreme Court has overruled <u>Benton</u>. Accordingly, it was not unlawful for the undersigned to take and accept Petitioner's guilty plea, and Petitioner's motion to amend should be denied.

**V.     Recommendation**

For the foregoing reasons, the undersigned recommends that Petitioner's claim that counsel failed to file an appeal, contained in his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence be **DENIED** and **DISMISSED WITH PREJUDICE**. The undersigned further recommends that Petitioner's motion for default judgment (Docket No. 53) and motion to amend (Docket No. 58) be **DENIED**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide an electronic copy of this Report and Recommendation to counsel of record.

DATED: February 17, 2015

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE